UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
Neil Felix,

                            Plaintiff

          -against-

E-Lo Sportswear LLC,

                          Defendant
-------------------------------------------------------------------X

Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff, Neil Felix, by his attorneys, Steven H. Sewell, P.C., as and for his Complaint, complaining of the Defendant, E-Lo Sportswear LLC, hereby alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

<b>JURISDICTION AND VENUE</b>

      1.     This is a civil action for compensatory and punitive damages, proximately resulting from Defendant's violations of Plaintiff's rights pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA") and under the laws of the state and city of New York, and any other cause of action which can be inferred from the facts and circumstances hereafter set forth.

      2.     Jurisdiction of this Court is invoked under 28 U.S.C § 1331, the Doctrine of Pendant Jurisdiction, and the aforementioned statutory and constitutional provisions.

      3.     Venue is proper pursuant to 28 U.S.C. § 1391.

      4.     All conditions precedent to maintaining this action have been fulfilled.  A Charge of Discrimination was filed with the Equal Employment Opportunity Commission

("EEOC") on or about the 11th day of November, 2020.  Upon information and belief, the

EEOC filed the Charge with the New York State Division of Human Rights.

**PARTIES**

5.      At all times hereafter mentioned, Plaintiff, Neil Felix ("Neil"), was a

resident of Nassau County, New York, until on or about January 1, 2021, when he became

a resident of the County of Palm Beach, Florida.

6.      Defendant, E-Lo Sportswear LLC ("E-Lo"), was and is a New York State

limited liability company, maintaining offices for the transaction of business at 469

Seventh Avenue, New York, New York 10018.

**FACTS**

7.      Neil is a white male, having been born on the 23rd day of September, 1953.

8.      Neil was hired by E-Lo in the latter part of April, 2007.  Initially, Neil

worked as an account executive/division head, directly under E-Lo's principal owner, Eli

Lomita ("Eli").  Eli and Neil worked closely together with other employees of E-Lo for

approximately eight (8) years before he was joined with David Lomita ("David").  David

is Eli's son, and worked at the same New York address.

9.      The work atmosphere at E-Lo can only be described as a toxic work

environment.  The work atmosphere was always extremely harsh on E-Lo's employees.

There was constant condescending, berating and abusive language hurled at the employees,

particularly by David, although Eli was a contributing factor.  The behavior which David

and Eli exhibited would change from day to day and from employee to employee.

10.     At the end of weekly sales meetings, almost without exception, David or

Eli, or sometimes both, went on a tirade.  Many times they screamed, cursed, and berated

2

the employees, and threatened each other. They were completely out of control. It was apparent that David resented his father, Eli, for a variety of reasons. Although inappropriate, David vented his feelings at the weekly sales meetings, and held nothing back. Quite often, each spoke about eliminating the other from E-Lo through a buy-out. In addition to the personal attacks on employees, David and Eli made it an extremely uncomfortable work environment through their personal attacks against each other.

11.     From the inception of Neil's employment with E-Lo, there would be weekly sales meetings wherein various sales topics were discussed. Almost from the inception of Neil's participation from approximately 2015, David would constantly mention to E-Lo's employees that were present, Neil included, that it was his intention to hire younger, cheaper people in place of the existing sales personnel. Among the employees who were present for the majority of the weekly meetings were Allyson Twomey, Sales Manager; Lori McKeever, Seller;  Jennifer Farrell, Seller;  Neva Turi, Seller; and Trinidad Hernandez, Seller. Arsenio Murado, a Seller, was also present, however, he was with Eli for approximately two (2) years.

12.     Unfortunately, the aberrant behavior of Eli and David continued throughout my employment with E-Lo. In late Spring, 2017, David told me that I was overpaid, and wanted to drastically reduce my compensation by $100,000.00. David and I went back and forth on this, until Neil reluctantly agreed to an annual reduction of $80,000.00, together with David's promise that Neil would get back some of the reduction based upon a commission agreement. Although David was reminded of this on numerous occasions, the reduction was never reversed.

13.     The reduction in salary was based at least in part due to Neil's age, and David's desire to force Neil out of E-Lo.

14.     In March of 2020, COVID-19 had a dilatory effect on E-Lo.  E-Lo's employees were notified that the office would be closing temporarily as of March 13, 2020. Neil received a notification from E-Lo that he would be furloughed on a temporary basis and would be informed when the situation changed.

15.     After being temporarily furloughed, Neil did not hear further from Eli, David or E-Lo's human resource department.

16.     On or about the middle of April, 2020, E-Lo called back some of the sellers, and by the end of May, early June, all of the sellers in Neil's division were called back to work at E-Lo.

17.     The only people not called back to work at that time was one woman who informed management that she was retiring April 15, 2020, and Neil.

18.     During the furlough period, Neil was in contact with Eli and David regarding when Neil would return to work.  In early July, 2020, Neil was speaking with Eli, and Eli and Neil worked out a new compensation agreement for Neil.  Eli advised Neil that he was agreeable and pleased with the new compensation agreement.

19.     Heretofore, on or about the 17th day of July, 2020, Neil was out of town, and David asked if he could call Neil, which Neil agreed to.  During the ensuing conversation, Neil asked David where he stood with regard with his employment with E-Lo, and when could he return to work.  At that time, David advised Neil that he should look for another job.  David further advised Neil, as he had reiterated on countless occasions at weekly sales meetings, that he was looking for younger employees.  Upon

4

hearing this, Neil asked David what his severance package would be, based upon his approximately thirteen (13) years of exceptional work performance and loyalty to E-Lo, Eli and David.  David advised Neil that there would not be a severance.  That was the last time that Neil spoke with David.  It was clear, based upon statements made by David at the weekly sales meetings, which were repeated hundreds of time, as well as what he told Neil directly on the 17th day of July, 2020, that Neil was terminated on the basis of his age.

20.     Throughout Neil's employment with E-Lo, Neil was a dedicated, hardworking employee who markedly improved E-Lo's bottom line.  In addition to his regular responsibilities during "business hours", Neil shopped on weeknights and weekends, went out of town on behalf of E-Lo on numerous occasions and conducted extensive business conversations with Eli on weekends and evenings.  Neil was a highly effective employee that consistently brought in E-Lo's product distribution, and raised their sales volume and profitability on a consistent basis.  Throughout his time with E-Lo, Neil never received a negative evaluation.

21.     Throughout his employment with E-Lo, and at the time of his termination, Neil was a member of a protected class, to wit, over the age of 40 years old.

22.     Throughout his entire employment with E-Lo, up to the time of his termination, Neil was highly qualified for his employment with E-Lo.

23.     At the time of his termination, Neil was terminated without cause.

24.     Upon information and belief, based upon the numerous statements by David that he was looking for younger employees, and the fact that younger employees of E-Lo were not terminated, it is clear that E-Lo's termination of  Neil was discriminatorily motivated by Neil's age.

## FIRST CLAIM FOR RELIEF
### (Age Discrimination in Violation of ADEA)

25.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

26.     The Defendant discriminated against Plaintiff in the terms and conditions of his employment, based on Plaintiff's age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621.

## SECOND CLAIM FOR RELIEF
### (Age Discrimination in Violation of NYCHRL)

27.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

28.     Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment based upon his age in violation of the Administrative Code of the City of New York, §8-107 et seq.

## THIRD CLAIM FOR RELIEF
### (New York State Human Rights Law)

29.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

30.     New York State Human Rights Law provides, among other things, that (a) it shall be unlawful discriminatory practice: (1) for an employer or licensing agency, because of an individuals age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violation victim status, to refuse to hire or employ or to bar or discharge from employment such individual or to discriminate against such individual in compensation, or in terms, conditions or privileges of employment.

31.     As set forth herein, the Defendant's actions are in violation of the New York State human Rights Law.

## DEMAND FOR JURY TRIAL

**PURSUANT TO RULE 38(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE, PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES IN THIS ACTION.**

**WHEREFORE**, Plaintiff demands judgment against Defendant for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorney's fees and the cost of disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated: Nassau, New York
       August 26, 2021

                                        Yours, etc.

                                        STEVEN H. SEWELL, P.C.

                                        By:  Steven H. Sewell, Esq.
                                        *Attorneys for Plaintiff*
                                        675 Old Country Road
                                        Westbury, New York  11590
                                        (516) 997-0400